Jacob Wieselman, OSB 05100
Wieselman Group
460 Fifth Street
Lake Oswego, Oregon  97034
Telephone 503.697.7277
Facsimile   503.697.9299
jackw@wgroup-law.com

Attorney for Defendant Anthony Rynders

UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

| | |
|---|---|
| DOMAINE SERENE VINEYARDS AND WINERY, INC., | Case CV-09-795-KI |
| Plaintiff, | DEFENDANT ANTHONY RYNDERS' MEMORANDUM IN SUPPORT OF HIS F.R.C.P. 12(b) MOTION TO DISMISS |
| v. | |
| ANTHONY RYNDERS, | |
| Defendant. | |

This Memorandum is submitted in support of Defendant Anthony Rynders' *Motion to Dismiss* brought pursuant to F.R.C.P. 12(b)(6) & 12(b)(1).  Defendant Rynders has moved for an order dismissing Count I of the Plaintiff's Complaint brought pursuant to the Computer Fraud and Abuse Act, 18 U.S.C § 1030; the only basis for federal subject matter jurisdiction. Defendant's Motion also respectfully submits that should the Court decline to exercise supplemental jurisdiction over the remaining state law claims presented in Counts II through IV and dismiss the Complaint in its entirety.

## I.  INTRODUCTION

This is a state law trade secret and breach of fiduciary relationship claim arising from a soured employment relationship between the Defendant, an Oregon resident, and the Plaintiff, a corporation with principal place of business in Oregon, and does not belong in federal court.  In

an effort to create federal subject matter jurisdiction, Plaintiff Domaine Serene Vineyards and Winery, Inc. ("Domaine Serene") has asserted a tenuous claim for relief against Mr. Rynders under the Computer Fraud and Abuse Act, 18 U.S.C. § 1030 ("CFAA").  Domaine Serene's claim, however, fails to allege sufficient facts to support a CFAA claim upon which relief can be granted.  Domaine Serene does not sufficiently allege that Mr. Rynders improperly accessed a protected computer without authorization or in excess of authorized access, with the intent to defraud Domaine Serene and, that by means of such conduct caused loss in excess of $5,000.

Domaine Serene's claims under the CFAA are the only basis for federal subject matter jurisdiction.  Pursuant to 28 U.S.C. § 1367(c), following dismissal of the CFAA count, the Court should decline to exercise supplemental jurisdiction over the remaining state law claims.

## II.  BACKGROUND FACTS AND PROCEDURAL HISTORY

Defendant Anthony Rynders is a professional winemaker who works and resides in Oregon.  (Rynders' Decl. ¶ 2).[1]  Plaintiff Domaine Serene, although incorporated in Minnesota, has as its principal place of business, a winery located in Dayton, Oregon.[2]  (Order of Remand, p. 8).  Domaine Serene's website is found at *www.domaineserene.com.*

Mr. Rynders was Domaine Serene's winemaker from August 17, 1998 to May 12, 2008.  (Complaint ¶ 8).  From the start of his employment at Domaine Serene in 1998, until the end of the relationship in 2008, Mr. Rynders worked as an "at-will employee" without any employment contract (Rynders Decl.. ¶ 9).  Without an employment contract, Mr. Rynders' employment had

---

[1]  The Declaration of Anthony ("Tony") Rynders is attached hereto as Exhibit A and referred to herein as "Rynders' Decl."

[2]  The Plaintiff herein previously brought suit against this Defendant in the state courts of Minnesota asserting causes of action arising from the same set of operative facts as for the basis for this action.  As further discussed infra, Defendant removed the case to the United States District Court for the District of Oregon and Plaintiff subsequently moved for remand to the state court, which motion was granted by order of January 9, 2009 upon the District Court's finding of lack of diversity of citizenship.  The District Court's order is attached hereto as Exhibit B and referenced hereinafter as "*Order of Remand.*"

no durational term or contractually set rate of pay.   There was no contractual confidentiality agreement or non-competition agreement in place. (Rynders' Decl. ¶ 10).

**Consideration Of New Opportunities.** Beginning in approximately 2004, Mr. Rynders began considering using his winemaking skills to work for a different company, or perhaps for himself (Rynders Decl. ¶ 11).   In his exploration of opportunities, Mr. Rynders began talking with others in the winegrowing region where he lived.   He talked to Joel Myers of Dayton, Oregon about the possibility ordering grape vines in the future. (*Id.)* He talked to Danielle and Laurent Montalieu of Yamhill, Oregon about leaving Domaine Serene. (*Id.)* He talked to Josh Bergstrom of Bergstrom Winery, located in Newberg, Oregon about ordering barrels for making wine. (*Id.*)   He also toured vineyards in Oregon with Mr. Bergstrom and Jay McDonald of Carlton, Oregon (*Id.*).   He communicated with Scott Baldwin of DePonte Centers, in Dayton, Oregon, about his desire to leave Domaine Serene (*Id.*).   Also, to fulfill a long-time dream, Mr. Rynders purchased a small farm in Carlton, Oregon (*Id.*).   Mr. Rynders (with the consent of Domaine Serene) also invested in land in Oregon that would be used to grow grapes for an entity known as Octave Vineyard (*Id.*).   As another alternative, he studied the possibility of making wine for himself in Oregon. (*Id.*).

Mr. Rynders was, however, far from committed to a particular means for earning his livelihood.  Mr. Rynders made attempts to improve his satisfaction with Domaine Serene.  First, he suggested a new structure for the winemaking department (of which he was the head) that would include promoting Drew Voit, his Associate Winemaker, to the position of "Winemaker". (*Id.)* Mr. Rynders also suggested that his own position be changed to "Director of Winemaking". (*Id.*).   These suggestions were rejected by the owners of Domaine Serene at meetings held in Dayton, Oregon. (*Id.* ¶ 17).   Consequently, in the spring of 2008, Mr. Rynders met with Ken and Grace Evenstad, the owners of Domaine Serene, and presented a written proposal for his gradual transition out of the company, suggesting that he remain with Domaine Serene as a "contract winemaker" through 2008 and a "consulting winemaker" in 2009. (*Id.*).   This suggestion caused

the Evenstads to become very upset during meetings of May 5 and May 7, 2008 when the proposal was discussed. (*Id.*).

Plaintiff does not disagree that Mr. Rynders was an at-will employee and without contractual obligation to Domaine Serene (see Complaint ¶¶ 48-56).  Although, the interpretation of events preceding the termination of the at-will relationship between the parties will be left for trial, Mr. Rynders submits that Domaine Serene objected to Mr. Rynders' decision to "move on" and move forward in his career, that Domaine Serene begrudged him the opportunity to advance in his career and attempt, after ten years with Domaine Serene, to build equity and benefit from his well-deserved reputation as a premier Oregon winemaker.  (See Complaint ¶¶ 48 - 56; Rynders' Decl. ¶ 15).  Thus, what was viewed as negotiation by Mr. Rynders is now characterized as threats by Plaintiff (see Complaint ¶¶ 53 - 56).

On May 12, 2008, without further discussion on the proposals presented a week earlier, Mr. Rynders was called into Domaine Serene's offices in Dayton, Oregon, summarily fired and immediately escorted off the premises. (*Id.*).

Since his firing, Mr. Rynders has continued to live in Oregon where he has established a wine-making consulting business. (Rynders' Decl.  ¶ 17).  He is neither making a white pinot noir wine nor consulting with anyone making white pinot noir wine. (*Id.*).  Meanwhile, Domaine Serene has elevated Mr. Rynders' former assistant, Drew Voit, to Chief Consulting Winemaker and continues to produce and market all of the same Pinot Noir and other wines that had been made under the direction of Mr. Rynders, including a white pinot noir wine made from red pinot noir grapes that Plaintiff markets under the name "Coeur Blanc".

**Legal Proceedings To Date.**  Less than three months after firing Mr. Rynders, Domaine Serene sued him.  In August of 2008, Domaine Serene filed a lawsuit against Mr. Rynders in the Fourth Judicial District of the Minnesota state court, located in Hennepin County, Minnesota.[3]

---

[3]  The Complaint in that action encaptioned *Domaine Serene Winery, Inc. v. Anthony Rynders*, Civil File No: 08-18977, is hereinafter referred to as the "Minnesota. Complaint".

DEFENDANT RYNDERS' MEMORANDUM  IN SUPPORT
          OF HIS F.R.C.P. 12(b) MOTION TO DISMISS

(Complaint ¶ 9).  By a Minnesota-state-court-captioned Summons and Complaint dated July 30, 2008, Domaine Serene set forth its claims.

Although the Minnesota Complaint asserted claims that Mr. Rynders took proprietary information including customer lists, business plans, winemaking records and templates (Complaint ¶ 55), it alleged not a single fact supporting its allegation that Plaintiff had been damaged.  The Complaint in the instant action is similarly devoid of specific assertions of loss, choosing instead to generally allege that:

> Rynders wronged Domaine Serene in its property rights by dishonest methods and schemes, and caused it losses, as defined in 18 U.S.C. § 1030(e) (11), in an amount aggregating at least $5,000 in value.  These losses include but are not limited to costs of responding to Rynders' offenses and conducting a damage assessment.

(Complaint ¶ 68.); that "Domaine Serene will continue to suffer immediate irreparable injury, harm and damage, including but not limited to damage as defined by 18 U.S.C. § 1030 (e) (8)," (Complaint ¶ 70); that "Domaine Serene has suffered in an amount not presently ascertainable but which shall be proved at time of trial" (Complaint ¶ 71).

The sole allegation in the Complaint that might present a quantifiable measure of damage is irrelevant to the CFAA cause of action and is found at Paragraph 85, within Count III, in which Plaintiff claims "breach of the common law duty of loyalty and fiduciary duty" and seeks damages including return of Mr. Rynders' salary during his period of disloyalty, a quantifiable sum.  (Complaint ¶ 85).

Although Plaintiff complains of various wrongful acts by Mr. Rynders, both in the Minnesota action and the instant lawsuit, proceedings and discovery to date[4] make it clear that Plaintiff's primary concern is the allegedly secret and proprietary process for making Coeur

---

[4]  Aware that the motion practice in Minnesota might ultimately result in adjudication of this matter in an Oregon court, the parties agreed that discovery exchanged and depositions taken in the Minnesota state and federal actions would "carry over" to subsequent Oregon state or federal actions as if undertaken therein.  *See, Plaintiff's Fed. R. Civ P. 26(a)(1)  Agreement and Plaintiff's Proposed Discovery Plan,* (Docket #8).

Blanc, its white pinot noir wine and the possibility that Mr. Rynders might make use of that process.  (See Complaint ¶¶ 14 – 17; Rynders' Decl. ¶ 18).  Given that focus, it is not surprising that Plaintiff is unable to more specifically quantify or even identify any loss or damage resultant of Mr. Rynders' other purported wrongful conduct.  Mr. Rynders submits that Plaintiff suffered no damage (Rynders' Decl. ¶ 22).

Mr. Rynders removed the case from Minnesota state court to the United States District Court for the District of Minnesota and subsequently filed a motion seeking dismissal for improper venue or, alternatively, transferring the case to the United States District Court for the District of Oregon.  Plaintiff subsequently filed a motion seeking remand to the state courts.  By order dated January 9, 2009 (attached hereto as Exhibit B), the District Court (Rosenbaum, DJ) remanded the case to the state courts of Minnesota finding that as Oregon was "clearly the center of Domaine Serene's corporate activity" and, thus, its principal place of business, the Court was without diversity jurisdiction.  (See Exhibit B; Order of Remand, pg. 8 - 10.).

Again in the state courts, Mr. Rynders filed a Motion to Dismiss on the basis of Forum Non Conveniens, explaining, as he does above, that all of the relevant events occurred in Oregon and that all of the parties and witnesses are located in this state.  (See Complaint ¶ 9).

On June 2, 2009, before the state ruled on Mr. Rynders' motion to dismiss, the parties reached agreement and submitted a stipulation for dismissal to the Minnesota state court agreeing, in relevant part, that if pursued by Plaintiff, the lawsuit against Mr. Rynders would be filed in Oregon. (Complaint ¶ 10.).

On July 10, 2009, Domaine Serene filed the instant lawsuit.  The factual allegations of the Complaint at bar are virtually identical to those in the Minnesota Complaint.  However, as material to the instant motion to dismiss, the Complaint's most significant difference is the

inclusion of a count not found in the Minnesota Complaint, Count I (Complaint ¶¶ 64 - 72), which asserts claim under the federal Computer Fraud and Abuse Act, 18 U.S.C. § 1030, (the "CFAA"), a cause of action not found in the Minnesota Complaint.

The operative language of the CFAA claim is found in just ten paragraphs of the Complaint.  Including paragraphs incorporated by reference,[5] the CFAA count asserts that:

> 2.(g)   Among other improper actions, during his employment with Domaine Serene, Rynders: …Misappropriated important Domaine Serene documents without authorization or in excess of his authorization and e-mailed those documents to his home e-mail address **shortly before his departure**. (Emphasis added).

> 55.    ...Then, just hours before the planned meeting with Domaine Serene's owners, Rynders accessed Domaine Serene's computer system and sent, from his work computer to his home e-mail address, six e-mails, each with multiple attachments that contain business plans, customer lists, wine-making records, templates and other confidential and proprietary information belonging to Domaine Serene. Rynders had no legitimate business reasons to access and send himself these confidential files just hours before his planned meeting. Rynders' action accessing and transmitting such information from Domaine Serene computer system was unauthorized.

> 64.    Rynders accessed one or more computers without authorization, or in excess of his authorization, thereby obtaining information from such computers.

> 65.    Said computers were used in or affected interstate or foreign commerce or communication.

> 66.    Rynders accessed such computers without authorization, or in excess of his authorization, knowingly and with an intent to defraud.

> 67.    Rynders wronged Domaine Serene in its property rights by dishonest methods and schemes, and caused it losses, as defined in 18 U.S.C. § 1030(e)(11), in an amount aggregating at least $5,000 in value.  Those losses include but are not limited to costs of responding to Rynders' offenses and conducting a damage assessment.

> 68.    Rynders violated the Computer Fraud and Abuse Act, 18 U.S.C. § 1030.

---

[5]   Paragraph 64 restates, re-alleges and includes by reference, those paragraphs preceding Count I.

69.  As a direct and proximate result of Rynders' wrongful conduct, Domaine Serene is suffering and will continue to suffer immediate and irreparable injury, harm and damage, including but not limited to damage as defined by 18 U.S.C. § 1030(e)(8), unless Rynders is restrained from his present conduct.

70.  As a further direct and proximate result of this wrongful conduct, Domaine Serene has suffered damage in an amount that is not presently ascertainable but which shall be proved at the time of trial.

71.  Domaine serene is entitled to recover losses and damages in an amount to be determined at trial.

## III.    STANDARD OF REVIEW

Dismissal under Rule 12(b)(6) can be based on the lack of a cognizable legal theory or the absence of sufficient facts alleged under a cognizable legal theory. "A Rule 12(b)(6) motion tests the legal sufficiency of a claim." *Navarro v. Block,* 250 F. 3d 729, 732 (9th Cir. 2001). When reviewing a motion to dismiss, the Court "must determine whether, assuming all facts and inferences in favor of the nonmoving party, it appears beyond doubt that [Plaintiffs] can prove no set of facts to support [their] claims." *Arder v. Lopez,* 450 F.3d 445, 448 (9th Cir. 2006) (internal quotations omitted). A plaintiff's obligation to provide the grounds justifying his claim for relief requires more than labels and conclusions or a formulaic recitation of the elements of a cause of action. *Papasan v. Allain,* 478 U.S. 265, 286 (1986). "Factual allegations must be enough to raise a right to relief above the speculative level. (*See* 5.C. Wright & A. Miller, Federal Practice and Procedure §1216, pp. 235-236 (3d Ed. 2004)) (Plaintiff must do more than present facts that merely create a suspicion of a legally cognizable right of action on the assumption that all of the allegations in the complaint are true.).

Rule 12(b)(1) provides for a motion to dismiss for lack of subject matter jurisdiction. The burden of proof on a Rule 12(b)(1) motion to dismiss is on the party asserting jurisdiction. *See Kokkonen v. Guardian Life Ins. Co.,* 511 U.S. 375, 377 (1994). On a 12(b)(1) motion to

dismiss for lack of subject matter jurisdiction, the court is not "restricted to the fact of the pleadings, but may review any evidence, such as affidavits and testimony, to resolve factual disputes concerning the existence of jurisdiction." *McCarthy v. United States*, 850 F.2d 558, 560 (9th Cir. 1988).

## IV. DOMAINE SERENE FAILS TO STATE A CLAIM FOR RELIEF UNDER THE COMPUTER FRAUD AND ABUSE ACT.

The CFAA provides criminal liability for any one of seven prohibited activities, which, broadly speaking, involve computer hacking. *See* 18 U.S.C. § 1030(a)(1) - (7).  Although it is primarily a criminal statute, the CFAA authorizes a civil cause of action to any person who suffers damage or loss due to violations of its proscriptions.  "The Ninth Circuit has clarified that subsection (g) enables a party to bring a private cause of action for violation of conduct proscribed by the CFAA.  *Theorfel v. Farey-Jones,* 359 F.3d 1066, 1078 n.5 (9th Cir. 2004); *Shamrock Foods Company v. Gast, et al*, 535 F. Supp 2d 962 (D. AZ 2008).

Count I of the instant Complaint is silent as to the specific subsection of the CFAA that Mr. Rynders is alleged to have violated.  However, as that count is worded, Domaine Serene appears to assert violation of subsections (a)(2)(c) and (a)(4) of the CFAA.  (See Complaint ¶¶ 66 – 68).  Those subsections provide, respectively, that an actor is in violation of the act if he "…intentionally accesses a computer without authorization or exceeds authorized access, and thereby obtains-- information from any protected computer if the conduct involved an interstate or foreign communication," (18 U.S.C. 1030(a)(2)(c)), or if he "…knowingly and with intent to defraud, accesses a protected computer without authorization, or exceeds authorized access, and by means of such conduct furthers the intended fraud and obtains anything of value, unless the object of the fraud and the thing obtained consists only of the use of the computer and the value of such use is not more than $5,000 in any one-year period," (18 U.S.C. § 1030(a)(4)).

Subsection (g) of the act establishes but imposes limitation on the right to bring a private cause of action under the CFAA by requiring that to be actionable, conduct which violates one of the proscriptions of subsection (a) must also involve one of the five prerequisites set out in subsection (a)(5)(B).[6]   The five threshold factors of subsection (a)(5)(B) are:

(i) loss to 1 or more persons during any 1-year period (and, for purposes of an investigation, prosecution, or other proceeding brought by the United States only, loss resulting from a related course of conduct affecting 1 or more other protected computers) aggregating at least $5,000 in value;

(ii) the modification or impairment, or potential modification or impairment, of the medical examination, diagnosis, treatment, or care of 1 or more individuals;

(iii) physical injury to any person;

(iv) a threat to public health or safety; or

(v) damage affecting a computer system used by or for a government entity in furtherance of the administration of justice, national defense, or national security;

Plaintiff asserts only that Mr. Rynders' conduct is violative of the CFAA resulted in loss of at least $5,000.  (Complaint ¶ 68).  Factors (ii) to (v) are not present in this action under any reasonable interpretation of the facts alleged in the Complaint.

A.      Mr. Rynders Did Not Access His Computer Without Authority Or Exceed His Authority On Doing So.

A violation of subsection (a)(2)(C) occurs when a person intentionally accesses a computer without authorization or in excess of authorized access and thereby obtains information from a "protected computer if the conduct involved an interstate or foreign communication."  18 U.S.C. § 1030(a)(2)(C).  Subsection (a)(4) is violated if a person knowingly and with intent to

---

[6]   18 U.S.C. § 1030(g) provides:

Any person who suffers damage or loss by reason of a violation of this section may maintain a civil action against the violator to obtain compensatory damages and injunctive relief.  A civil action for a violation of this section may be brought only if the conduct involves 1 of the factors set forth in clause (i), (ii), (iii), (iv), or (v) of subsection (a)(5)(B)…

defraud, accesses a protected computer without authorization or in excess of authorized access and by means of such conduct obtains anything of value. 18 U.S.C. § 1030(a)(4). Thus, violations of subsections (a)(2) and (a)(4) require allegations that Mr. Rynders accessed Domaine Serene's computers either without authorization or in excess of authorized access.

The dispute regarding the proper interpretation of the terms "without authorization" and "exceeds authorized access" has been addressed by courts in other jurisdictions and the courts have split on the question of whether an employee with an improper purpose may be held civilly liable under the CFAA for accessing computer information that he is otherwise permitted to access within the scope of his employment. Several courts have concluded that an employee acts "without authorization" or "in excess of authorized access" when he accesses confidential or proprietary business information from his employer's computers that he has permission to access but then uses that information in a manner that is inconsistent with the employer's interests or in violation of contractual obligations or fiduciary duties. *See, e.g., Int'l Airport Ctrs., L.L.C. v. Citrin*, 440 F.3d 418, 420 -21 (7th Cir. 2006); *see also Shurgard Storage Ctrs., Inc. v. Safeguard Self Storage, Inc.*, 119 F. Supp 2d 1121, 1125 (W.D. Wash. 2000). Other courts have adopted a much narrower interpretation and have held that the CFAA is implicated only by the unauthorized access, obtainment or alteration of information, not the misuse or misappropriation of information obtained with permission. *See, e.g., Black & Decker (US), Inc. v. Smith*, 568 F. Supp. 2d 929, 933 (W.D. Tenn. 2008); *see also Shamrock Foods Co. v. Gast*, 535 F. Supp 2d 962, 964 (D. Ariz 2008). Mr. Rynders submits that the *Black & Decker/Shamrock* line of cases reflects a narrower but more correct interpretation of the meaning of the terms "without authorization" and "exceeds authorized access."

The rationale supporting this less expansive view that the phrase "without authorization"

only reaches conduct by outsiders who do not have permission to access the computer in the first

place is succinctly presented in *Shamrock Foods, Co., supra:*

> First, the plain language supports a narrow reading of the CFA. …Section
> 1030(e)(6) contemplates that an "exceeds authorized access" violation occurs
> where the defendant first has initial "authorization" to access the computer. But,
> once the computer is permissibly accessed, the use of that access is improper
> because the defendant accesses information to which he is not entitled. Under
> *Citrin* and *Shurgard,* however, that distinction is overlooked. Under their
> reasoning, an employee who accessed a computer with initial authorization but
> later acquires (with an improper purpose) files to which he is entitled-and in so
> doing breaches his duty of loyalty-is "without authorization," despite the Act's
> contemplation that such a situation constitutes access." *18 U.S.C. § 1030(3)(6)*.
> The construction of *Citrin* and *Shurgard* thus conflates the meaning of those two
> distinct phrases and overlooks their application in §1030(e)(6)… Thus, the plain
> language of § 1030(a)(2), (4), and (5)(A)(iii) target "the unauthorized
> procurement or alteration of information, not its misuse or misappropriation.
>
> …Second, the legislative history supports a narrow view of the CFAA. …The
> general purpose of the CFAA "was to create a cause of action against computer
> hackers (e.g. electronic trespassers)." …Thus, the conduct prohibited is
> analogous to that of 'breaking and entering' rather than using a computer in
> committing the offense ….**In 1986, "Congress amended the CFAA to
> substitute the phrase 'exceeds authorized access' for the phrase 'or having
> accessed a computer with authorization, uses the opportunity such access
> provides for purposes to which such authorization does not extend.' " …By**
> enacting this amendment and providing an express definition for "exceeds
> authorized access," the intent was to "eliminate coverage for authorized access
> that aims at 'purposes to which such authorization does not extend,' " thereby
> "remov[ing] from the sweep of the statue one of the murkier grounds of liability,
> under which a [person's] access to computerized data might be legitimate in some
> circumstances, but criminal in other (not clearly distinguishable) circumstances
> that might be held to exceed his authorization."
>
> …Finally, principles of statutory construction persuade the Court to adopt a
> narrower view of the CFAA. The rule of lenity guides the Court's interpretation
> of the CFAA because it has both criminal and noncriminal applications. Such
> rule requires a court confronted with two rational readings of a criminal statue,
> one harsher than the other, to choose the harsher only when Congress has spoken
> in clear and definite language. The rule weighs in favor of adopting the narrower
> approach. The approach advanced by *Shamrock* would sweep broadly within the
> criminal statute breaches of contract involving a computer…Similarly, an
> interpretation of CFAA based upon agency principles would greatly expand
> federal jurisdiction by conferring a federal cause of action whenever an employee

causes a statutorily recognized injury.  The Court declines the invitation to open the doorway to federal court so expansively when this reach is not apparent from the plain language of the CFAA.

*Shamrock Foods,* 535 F. Supp at 965 – 967, (internal citations omitted) (emphasis added).

The entirety of Plaintiff's factual support for its assertion that Mr. Rynders violated subsection (a)(2)(c) of the CFAA is found at Paragraphs 2(g), 55, 64, 65 and 66 of the Complaint.  Plaintiff does not contend that Mr. Rynders was unauthorized to access the computer in question.  Plaintiff admits that the acts central to Count I occurred while Mr. Rynders was still employed by Domaine Serene, "shortly before his departure" from the company, (Complaint ¶ 2(g)), and just hours before the planned negotiation meeting with Domaine Serene's owner, a meeting at which Mr. Rynders was fired.  According to Plaintiff, prior to being fired, Mr. Rynders made an unauthorized transmission of six e-mails from his work computer to his home computer; e-mails that contained attachments of purportedly confidential and proprietary information, that Mr. Rynders had "**no legitimate business reasons to access and send himself [just] hours before his planned meeting**" and that said transmission of information was unauthorized.  (Complaint ¶ 55) (emphasis added).  In Paragraphs 64 and 66, Plaintiff asserts that Mr. Rynders accessed the subject computer "without authorization, or in excess of his authorization" and obtained information from them; acting knowingly and with intent to defraud.

In acknowledging that the e-mail transmissions occurred before Mr. Rynders was fired, Plaintiff admits that Mr. Rynders was as an employee of Domaine Serene at the time of the actions central to Count I.  Plaintiff seeks to avoid its admission as to Mr. Rynders' authority by alleging that he "had no legitimate business reasons to access and send himself these confidential files…," (Complaint ¶ 55), harkening to the agency concepts advanced by the *Citrin/Shurgard* line of thought.

Plaintiff does not allege that Mr. Rynders did not have authority to access the computers or the files in question as part of his normal employment; nor could it, as the files were located on a shared file "folder" on Domaine Serene's network, accessible to many employees.  In fact, several of the documents had been created by Mr. Rynders.  It is noteworthy that none of the files were remotely confidential.  The purported customer list, for example, was a copy of an outdated list of area restaurants that a winery employee had copied from a local newspaper or magazine.  Domaine Serene's actual customer lists are, in fact, stored elsewhere, in a secure location. (Rynders' Decl. ¶ 19).  Plaintiff understandably fails to allege that Mr. Rynders' act of accessing his work computer caused damage to the computers or any data, as it did not.  The files in question were neither deleted nor modified; mere copying causing no impairment to the data itself. (Rynders' Decl. ¶¶ 19 - 22).

As it is undisputed that Mr. Rynders was authorized to access the computers and the data at issue as part of his employment, the CFAA claim is defective as a matter of law.

B.    Plaintiff Has Failed To Sufficiently Plead That Mr. Rynders' Conduct Caused Loss Aggregating At Least $5,000 In Value.

A viable civil action under the CFAA may only be brought if it involves a loss aggregating at least $5,000 in value.  18 U.S.C. § 1030(g) (referring back to § 1030(c)(4)(A)(I)). *Creative Computing v. Getloaded.com LLC*, 386 F. 3d 930 (9th Cir. 2004); *see also United States v. Middleton*, 231 F. 3d 1207, 1213 (9th Cir. 2000).  Although courts in the many circuits have considered a panoply of expenses in assessing whether Plaintiff has met the $5,000 threshold, *see, e.g., EF Cultural Travel BV v. Explorica, Inc.*, 274 F. 3d 577 (1st Cir. 2001), (Company's payment of consultant fees for purpose of assessing whether its website had been compromise may be considered in assessing compensable loss under CFAA), *Del Monte Fresh Produce, N.A., Inc. v. Chiquita Brands Intern, Inc.*, 16 F. Supp 2d 805 (N.D. Ill. 2009) (fees paid to

technology consultant to examine defendant employee's computer were not "losses" under CFAA under certain circumstances), *see also, e.g.*, *U.S. v. Sabian,* 92 F.3d 865 (9th Cir. 1996), (permissible for court to compute "loss" based on hourly wage of victim company's employees incurred to repair the damage), this Court need not undertake an evaluation of whether damages pled constitute "loss" under the CFAA, as Plaintiff's Complaint asserts only unsupported conclusions of loss and formulaic recitation that Plaintiff has suffered generic damages, which allegations do not enable this Court to determine whether the $5,000 threshold has been met. *See, e.g.*, Complaint ¶ 68 (Rynders caused losses in an amount aggregating at least $5,000 in value, including costs of responding and conducting a damage assessment), Complaint ¶ 70 (Domaine Serene is suffering immediate and irreparable injury harm and damage), Complaint ¶ 71 (Domaine Serene has suffered damages not presently ascertainable but which shall be proved at time of trial).   Undefined allegations such as those are insufficient to justify allowing the Plaintiff the benefit of federal jurisdiction.

## V.    THE COURT SHOULD DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION OVER THE STATE LAW CLAIMS.

Although not alleged in its Complaint (see Complaint ¶¶ 5 - 6), Domaine Serene's basis for subject matter jurisdiction for its state law claims is presumably supplemental jurisdiction under 28 U.S.C. § 1367.  For the reasons discussed below, this Court should decline to exercise supplemental jurisdiction over the state law claims presented in Counts II to IV.

### A.    Dismissal Is Appropriate Under 1367(c)(2) Because The State Law Claims Predominate.

Domaine Serene's claims stem from its allegations that Mr. Rynders misappropriated its trade secrets and other confidential information shortly before he was fired.  Count II raises claim under the Uniform Trade Secrets Act, without statutory citation, but presumably made

under Oregon's enactment thereof, found at ORS 646.461 to 646.475. Count III (Breach of Common Law Duty of Loyalty and Fiduciary Duty) and Count IV (Theft And/Or Conversion) are common law claims. The sole federal law claim is the CFAA claim of Count I.

Where the sole federal claim "appears to be immaterial and made solely for the purpose of obtaining jurisdiction or… is wholly insubstantial and frivolous," the court should decline to exercise supplemental jurisdiction over the state law claims. *Bell v. Hood,* 327 U.S. 678, 682-83 (1946). "[I]f it appears that the state issues substantially predominate, whether in terms of proof, of the scope of the issues raised, or of the comprehensiveness of the remedy sought, the state claims may be dismissed without prejudice and left for resolution to state tribunals. …It has consistently been recognized that pendent jurisdiction is a doctrine of discretion, not of plaintiff's right." *United Mine Workers of Am. v. Gibbs*, 383 U.S. 715, 726-27 (1966); *see also Executive Software N. Am., Inc. v. United States Dist. Ct. for the Cent. Dist. Of Cal*., 24 F.3d 1545, 1557 (9th Cir. 1994).

As here, where state law claims unquestionably predominate, the Court may decline to exercise supplemental jurisdiction. *See, e.g., Elkins v. City of Portland*, No. CV-08-799-PK 2007 U.S. Dist Lexis 69044 (D. OR. July 20, 2009) (attached as Exhibit C, hereto); *see also West Coast, Inc. v. Snohomish County,* 33 F. Supp. 2d 924, 925 (W.D. Wash. 1999).

     B.     <u>Dismissal Is Appropriate Under 1367(c)(3) If The CFAA Claims Are Dismissed</u>.

Pursuant to 28 U.S.C. § 1367(c)(3), the Court may decline to exercise supplemental jurisdiction when the district court dismisses all claims upon which it had original jurisdiction. "[I]n the usual case in which all federal claims are eliminated before trial, the balance of factors…judicial economy, convenience, fairness and comity will point toward declining to exercise jurisdiction over the remaining state-law claims." *Carnegie-Mellon University v. Cohill,* 484 U.S. 343, 350 n. 7, 108 S. Ct. 614, 98 L. Ed. 2d 720 (1988); *see also Elkins v. City of*

DEFENDANT RYNDERS' MEMORANDUM IN SUPPORT
       OF HIS F.R.C.P. 12(b) MOTION TO DISMISS

*Portland, supra.*    Here, the only claim upon which the Court has original jurisdiction is the CFAA claim raised in Count I.  If the Court dismisses that claim, there is no other independent basis for subject matter jurisdiction and the balance of the counts should be dismissed.

## VI.    CONCLUSION

Domaine Serene's claim under the CFAA fails to state a claim upon which relief can be granted.  Because Mr. Rynders was an employee at the time of the purported wrongful acts and was authorized to access the computers and documents that are the subject of Count I, there is no improper or actionable conduct alleged that might form the basis of a claim under the CFAA.  Further, Plaintiff fails to allege loss with sufficient specificity to allow the Defendant or the Court to conclude that Plaintiff has satisfied the $5,000 loss threshold required for any claim under the CFAA.

As this is primarily a state law trade secret case, pursuant to 28 U.S.C. § 1367(c), the Court should decline to exercise supplemental jurisdiction over the state law claims that unquestionably predominate.  If this Court dismisses the CFAA claims, the Court will not have original jurisdiction over the residual claims.

For these reasons and such other reasons, Defendant Anthony Rynders respectfully requests that Domain Serene's Complaint be dismissed in its entirety.

DATED this 19th day of August, 2009.

Respectfully submitted,

*/s/ Jacob Wieselman*
Jacob Wieselman, OSB 05100
Attorney for Anthony Rynders